IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-cv-00216-D-KS

| | |
|---|---|
| **IN RE: DAEDONG-USA DATA SECURITY INCIDENT LITIGATION** | DEFENDANT DAEDONG-USA, INC.'S MEMORANDUM IN SUPPORT OF ITS FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT |

Defendant, Daedong-USA, Inc. ("DD-USA"), submits this Memorandum in Support of its Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Class Action Complaint.

## FACTS[1]

Plaintiffs Andrew K. Khoune ("Khoune"), Brian Pollard ("Pollard"), and John Viverette ("Viverette") (collectively, "Plaintiffs") are, or were, employed by DD-USA. [D.E. 18] ¶ 21. Plaintiffs contend, in conclusory fashion, that DD-USA requires its employees to provide personally identifiable information ("PII") and protected health information ("PHI") as a condition of employment. *Id.* Plaintiffs further allege that DD-USA obtains, collects, uses, and derives some sort of benefit from this PII and PHI. *Id.* at ¶ 23.

In early 2024, one or more unauthorized and unidentified individuals breached DD-USA's networks (the "Data Breach").[2] *Id.* at ¶ 26. As DD-USA advised its

---

[1] DD-USA assumes Plaintiffs' allegations as true for purposes of its Motion to Dismiss, only.
[2] The Data Breach Notice is attached as Ex. "A." This Court can consider the same when ruling on this Motion because it is central to and related to Plaintiffs' claims. *Penn v. 1st Southern Ins. Servs., Inc.*, 324 F. Supp. 3d 703, 713 (E.D.V.A. 2018).

employees, "[p]romptly upon becoming aware of the incident, we took steps to contain and remediate it, including revoking the unauthorized party's access to our systems. We also engaged third-party forensic investigators to assist in our investigation of the issue and took additional steps to enhance the security of our systems." Ex. A. DD-USA also advised impacted employees of their right to free credit monitoring. *Id.*

Notwithstanding this, Plaintiffs filed suit on behalf of themselves and a putative class and contend that DD-USA's actions were deficient in three general ways. First, Plaintiffs contend that DD-USA failed to comply with HIPAA in safeguarding their PHI. [D.E. 18] at ¶¶ 8-12. Second, Plaintiffs contend that DD-USA violated the FTC Act regarding how it maintained, stored, and protected PII. *Id.* at pp. 12-13. Third, Plaintiffs contend that DD-USA failed to comply with "industry standards" with respect to safeguarding and protecting PHI and PII. *Id.* at pp. 13-14. As a result, Plaintiffs have asserted claims against DD-USA for: (1) negligence, (2) breach of third party-beneficiary contract, (3) violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), (4) unjust enrichment, (5) breach of fiduciary duty, and (6) declaratory judgment. *Id.* at pp. 34-52.

## LAW AND ARGUMENT

### *A. Relevant Legal Standard.*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). When deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must accept Plaintiffs' allegation as true. *Barbour v. Garland*, 105 F. 4th 579, 589 (4th Cir. 2024). Notwithstanding, this Court need not accept Plaintiffs' legal conclusions as

true. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, Plaintiffs must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Id.* at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, "to survive a Rule 12(b)(6) motion, the complaint "must plead 'sufficient factual matter' to 'state a claim to relief that is plausible on its face." *Id.*

### ***B. Plaintiffs' Negligence Claim is Barred by the Economic Loss Doctrine.***

Plaintiffs' negligence claim (Count I) should be dismissed because, as alleged, it is barred by the economic loss doctrine.

Under the economic loss rule, "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *Blackman v. Bos. Whaler, Inc.*, 649 F. Supp. 3d 142, 153 (E.D.N.C. 2023) (internal citations omitted). To pursue a tort claim and a breach of contract claim concerning the same conduct, "a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." *Id.* (internal citations omitted). North Carolina courts have developed (and the Fourth Circuit has applied) the economic loss rule, which prohibits recovery for purely economic loss in tort when a contract, a warranty, or the Uniform Commercial Code operates to allocate risk. *Id.* (internal citations omitted); *Further Festivals, LLC v. Etix,* Inc., 2024 WL 1546919, at *6 (E.D.N.C. 2024).

While the economic loss rule does not bar independent tort claims, the independent tort must be "identifiable and distinct from a breach of contract claim[.]" *Id.* (internal citations omitted). If the alleged tortious conduct arises from

performance of or failure to perform a contract, then the tort does not constitute an "independent tort," and the economic loss doctrine bars the tort claim. *Id.* (internal citations omitted). Here, Plaintiffs' negligence claim fails because it arises from a contractual relationship, and Plaintiffs allege purely economic losses.[3] [D.E. 18] pp. 20-30. Indeed, North Carolina courts have extended the economic loss doctrine to bar the recovery of purely economic losses in employer-employee disputes. *See Superior Performers, Inc. v. Meaike*, 2014 WL 5819826, at *7 (M.D.N.C. 2014) (applying North Carolina law and rejecting claim based on employment agreement under the economic loss rule); *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 WL 5316772, at *17 (N.C. Super. 2011) (holding that economic loss rule bars tort claim in employment dispute). Notably, courts throughout the country have utilized the economic loss doctrine to bar similar negligence claims to those asserted by Plaintiffs. *See e.g. Longenecker-Wells v. Benecard Servs. Inc*, 658 F. App'x 659, 660 (3d Cir. 2016); *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 660 (E.D. Pa. 2015), *aff'd sub nom. Enslin v. Coca-Cola Co.*, 739 F. App'x 91 (3d Cir. 2018); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 757 (C.D. Ill. 2020); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 954 (S.D. Cal. 2014), *order corrected*, No. 11MD2258 AJB (MDD), 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014).

Moreover, and while Plaintiffs Khoune and Pollard allege they suffered "anxiety as a result of the release of his PII and PHI" and Plaintiff Viverette alleges

---

[3] As noted by the Fourth Circuit: "North Carolina courts have … recognized that at-will employment relationships are contractual." *McLean v. Patten Communities, Inc.*, 332 F. 3d 714, 719 (4th Cir. 2003); *Lee v. Norfolk S. Ry. Co.*, 912 F. Supp. 2d 375, 377 (W.D.N.C. 2012).

he suffered from "anxiety, sleep disruption, stress, fear, and frustration," these damages are speculative at best as there are no allegations whatsoever that their PII and PHI was actually released. [D.E. 18] at pp. 22, 24, 26-27. Instead, Plaintiffs only allege an "unauthorized party accessed [DD-USA's] network" and that "the unauthorized cybercriminal(s) accessed a cache of highly sensitive Private Information." *Id.* at ¶¶ 26, 28. Without any factual enhancement, such as actual misuse or possession of Plaintiffs' PII or PHI, any assertion of emotional distress or anxiety-related damages is insufficiently pled to maintain a negligence claim. *Bonham v. Wolf Creek Acad.*, 767 F. Supp. 2d 558, 570 (W.D.N.C. 2011) ("[N]o recovery is allowed when resort to speculation or conjecture is necessary to determine whether the damage resulted from the unlawful act of which complaint is made or from some other source.") (quoting *People's Ctr., Inc. v. Anderson*, 32 N.C. App. 746, 748 (1977)). Accordingly, Plaintiffs' negligence claim is barred by the economic loss rule as a matter of law and, consequently, Count I should be dismissed.

### *C. Plaintiffs have Failed to Plead a Viable Claim for Breach of Third-Party Beneficiary Contract Under North Carolina Law.*

Plaintiffs have not adequately alleged, nor can they, that they are an intended third-party beneficiary under North Carolina law and, therefore, Count II of the Complaint should be dismissed.

North Carolina law provides:

> a person may bring an action to enforce a contract to which he is not a party, if he demonstrates that the contracting parties intended primarily and directly to benefit him or the class of persons to which he belongs. The intent of the parties is ascertained by construction of the terms of the

> contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties are trying to accomplish. Furthermore, when a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement.

*DeMent v. Nationwide Mut. Ins. Co.*, 142 N.C.App. 598, 604 (2001) (quotations and citations omitted).

Thus, in order to state a claim for breach of third-party beneficiary contract under North Carolina law, Plaintiffs must allege: (1) the existence of a contract between two other persons; (2) the contract is valid and enforceable; and (3) the contracting parties "intended primarily and directly to benefit him or the class of persons to which he belongs." *Edwards v. CSX Transport., Inc.*, 983 F.3d 112, 117 (4th Cir. 2020); *Brown v. N. Carolina Dep't of Env't Quality*, 917 S.E.2d 252, 259 (N.C. Ct. App. 2025). Notably, Plaintiffs must establish they are an intended beneficiary of the contract; merely incidental beneficiaries will not suffice to state a breach of third-party beneficiary contract claim. *Id.* (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 407 S.E.2d 178, 181–182 (1991)); 13 *Williston on Contracts* § 37:8 (4th ed. 2013 & Supp. 2020). "A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person. It is not enough that the contract, in fact, benefits the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly." *Revels v. Miss Am. Org.*, 641 S.E.2d 721, 723 (2007).

"To determine the contracting parties' intent in this context, [courts] consider both the circumstances surrounding the transaction as well as the actual language of

the contract. That means looking outside the "four corners" of the contract when necessary, even as we ultimately construe the agreement strictly against the third party seeking enforcement." *Edwards*, at 118. When a third party seeks to enforce a contract, "the contract must be construed strictly against the party seeking enforcement." *Holshouser v. Shaner Hotel Grp. Props., One Ltd. P'ship*, 518 S.E.2d 17 (1999).

In this case, Plaintiffs assert that DD-USA "entered into virtually identical contracts with its employees to provide employment and other services to them, which services included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to it." [D.E. 18] p. 38. They further contend, in conclusory fashion, that "[s]uch contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendant agreed to receive and protect through its services." *Id.* Notably missing from Plaintiffs' allegations are **<u>any</u>** detailed description of these purported contracts, who the contracts were with, or what express obligations DD-USA purportedly had under the unidentified contracts. *See id.* at pp. 38-39. As pled, Plaintiffs do not plausibly allege the existence of **<u>any</u>** contract between two other persons. Rather, they simply allege "Defendant entered into virtually identical contracts with its employees" and "breached its contracts with its employees" and that Plaintiffs are or were employees of Defendant. *Id.* at ¶¶ 21, 177, 180.

Accordingly, Plaintiffs have failed to properly plead a claim for breach of third-party beneficiary contract. *See, e.g. In re Shearin Fam. Invs., LLC*, 418 B.R. 870, 876

(Bankr. E.D.N.C. 2009) ("To state a prima facie claim for breach of contract as a third party beneficiary, the allegations in the complaint must be sufficient to allow the court to draw a reasonable inference that the plaintiff was intended to be a third party beneficiary at the time the contract was made."); *In Re U.S. Vision Data Breach Lit.*, 2025 WL 615366, at *6 (D. New Jersey 2025) ("[W]here a plaintiff has not provided any supporting facts "other than his conclusory allegation that he is an intended third-party beneficiary," their third-party beneficiary claim should be dismissed."); *Adkins v. Everest Global Servs., Inc.*, No. 23-004, 2024 WL 3887127, at *14 (D. New Jersey Aug. 21, 2024) ("Plaintiff, however, fails to identify any specific contracts, or even the parties with whom Defendant entered these contracts. Nor does Plaintiff clarify the explicit provisions of the alleged contracts that demonstrate these contracts were made with the intent to benefit Plaintiff—the 'key' to a third-party beneficiary breach of contract claim.").

Regardless, and even assuming, *arguendo*, that Plaintiffs had properly pled the elements of such a claim, employees are typically not considered intended third-party beneficiaries of such contracts. *Bruno v. Donohoe as Trustee of Texas Med. Liability Trust*, 754 F. Supp. 3d 737, 750 (W.D. Tex. 2024); *In re Forta File Transfer Software Data Security Breach Lit.*, 749 F.Supp.3d 1240, 1265 (S.D. Fla. 2024)(dismissing third party beneficiary claim related to sharing of PII in class action because plaintiffs only provided court with "circular and boilerplate allegations" regarding their status as third party beneficiaries). For these reasons, Plaintiffs' claim for breach of third-party beneficiary contract should be dismissed.

***D. Plaintiffs' Claim for Violation of North Carolina's UDTPA Fails as a Matter of Law Because Such Claims do Not Apply to the Employer-Employee Relationship and the Purported Act of Sharing PHI or PII with an Employer Does not Constitute Acts Affecting Commerce Covered by UDTPA.***

Plaintiffs' UDTPA claim (Count III) fails as a matter of law because: (1) it does not apply to the employer-employee relationship; (2) the act of sharing PHI or PII with one's employer does not constitute an act "in or affecting commerce" that would be covered by the UDTPA; and (3) Plaintiffs have failed to plead a viable claim under the ITPA to support a UDTPA claim.

1. <u>Employer-Employee Relationships are Typically Not Covered by the UDTPA.</u>

Plaintiffs' UDTPA claim fails because that statute does not govern employer-employee relationships such as the one at issue here.

Under the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a violation of [UDTPA] N.C.G.S. § 75–1.1, Plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 583 (E.D.N.C. 2020) (internal citation omitted). An act or practice is unfair "if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive "if it has the capacity or tendency to deceive." *Stack v. Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 667 (M.D.N.C. 2013). The purpose of the UDTPA is to "provide a civil means to maintain ethical standards of dealings between persons engaged in business and the

consuming public within this State[,] and [it] applies to dealings between buyers and sellers at all levels of commerce." *In re Brokers, Inc.*, 396 B.R. 146, 160 (Bankr. M.D.N.C. 2008) (citing *Bhatti v. Buckland*, 328 N.C. 240, 245 (1991)); *see also Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C.App. 355, 357 (N.C.App. 2003) (stating that "N.C. Gen.Stat. § 75–1.1 was not meant to encompass all business activities or all wrongdoings in a business setting but 'was adopted to ensure that the original intent of the statute ... was effectuated.'").

While the UDTPA creates a private cause of action for consumers, *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68 (2000), the UDTPA "does not normally extend to run-of-the-mill employment disputes." *Dalton v. Camp*, 353 N.C. 647, 710 (2001); *see also HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592 (1991) (observing that UDTPA "does not cover employer-employee relations"); *Buie v. Daniel Int'l Corp.*, 56 N.C.App. 445, 448 (N.C.App. 1982) (holding that action based on employee's discharge for seeking workers' compensation benefits did not fall within scope of UDTPA); *Durling v. King*, 146 N.C.App. 483, 488 (N.C.App. 2001) (concluding that UDTPA did not apply in employees' suit to recover unpaid sales commissions).

The North Carolina Supreme Court has held that § 75-1 of the UDTPA is intended to "regulate two types of interactions in the business setting: (1) interactions between businesses, and (2) interactions between businesses and consumers," but not "a business's internal operations." *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 608 (M.D.N.C. 2019)(citing *White v. Thompson*, 364 N.C. 47, 53 (2010)). Specifically, § 75-1 does **not** apply to employer-employee relations because these activities are

governed by separate regulatory schemes. *Id.* (citing *HAJMM*, 328 N.C. at 593-94). Thus, North Carolina courts have generally exempted disputes arising from the employer-employee relationship from the UDTPA because they do not affect commerce. *Stack*, 979 F. Supp. 2d at 667 (citing *Durling*, 146 N.C.App. at 488).

Plaintiffs do not allege (nor can they) that their relationship with DD-USA was that of a business and a consumer. Rather, this was a traditional employer-employee relationship beyond the scope of the UDTPA. Indeed, Plaintiffs allege that they provided their PII and PHI to DD-USA solely as a condition of employment. [D.E. 18] p. 5. Plaintiffs were employees of DD-USA and their dispute with DD-USA falls squarely into the category of employer-employee disputes that are beyond the scope of the UDTPA. *See Eli Rsch., Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 757 (M.D.N.C. 2004) ("Typically, employer-employee disputes are deemed beyond the scope of the commerce that section 75–1.1 was intended to protect.") (internal citations omitted). Count III should be dismissed as a result.

2. <u>Sharing PHI or PII with One's Employer does not Constitute an Act In or Affecting Commerce Subject to the UDTPA.</u>

Plaintiffs have not sufficiently alleged that DD-USA's alleged actions regarding the acquisition and storage of Plaintiffs' PHI or PII "[a]s a condition of providing employment" are acts in or affecting commerce and their UDTPA claim should be dismissed for this reason as well.

The UDTPA defines "commerce" to include all business activities, however denominated, but not professional services rendered by a member of a learned profession. N.C. Gen.Stat. § 75–1.1(b). "'Business activities' is a term which connotes

the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *In re Brokers, Inc.*, 396 B.R. 146, 161 (Bankr. M.D.N.C. 2008) (internal citation omitted). "Although commerce is defined broadly under G.S. § 75–1.1(b) .... 'the fundamental purpose of G.S. § 75–1.1(b) is to protect the consuming public.'" *Id.* (internal citation omitted); *see also Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 165 (4th Cir. 1985) (stating that the apparent purpose of the act is to protect the consuming public). To "affect commerce," a defendant's allegedly deceptive acts must have a tangible effect on the marketplace. *See Esposito v. Talbert & Bright, Inc.*, 181 N.C.App. 742, 746, 641 S.E.2d 695, 698 (2007) (upholding a denial of summary judgment when no effect on commerce was alleged beyond an employee's relationship with his employer).

Plaintiffs' Complaint lacks any factual allegations whatsoever that DD-USA's purported acquisition and storage of PII or PHI constitutes "business activities" as contemplated by the UDTPA. Nor could they, as it was not part of its regular day-to-day business. Instead, as Plaintiffs concede, DD-USA "specializes in the…distribution of tractor and utility vehicles, engines, attachments, implements, and accessories." [D.E. 18] p. 1. As such, DD-USA's conduct regarding its employees' PHI or PII does not plausibly amount to "business activities" affecting commerce and thus subject to the UDTPA. *See Wilson*, 157 N.C.App. at 358 (finding that the "defendant was organized to provide electricity to the members of the utility cooperation" and that "alteration of its by-laws by the board of directors is not a day-

to-day, regular business activity," so it does not affect commerce). Count III is subject to dismissal for this reason as well.

3. Plaintiffs have Failed to Adequately Allege a Violation of the ITPA to Support a UDTPA Claim.

Plaintiffs have failed to plead a viable violation of the ITPA to support a UDTPA claim against DD-USA. Count III fails for this reason as well.

The ITPA is a state law that aims to protect North Carolina residents from identity theft by regulating businesses in their collection and use of an individual's personal identifying information. The ITPA provides a cause of action under the UDTPA for failing to notify the victim of a security breach. *Rogers v. Keffer, Inc.*, 243 F. Supp. 3d 650, 662 (E.D.N.C. 2017). A plaintiff must bring a claim for a violation of the ITPA under the UDTPA and must show "(1) an unfair act (2) in or affecting commerce (3) proximately causing injury." *Rogers*, 243 F. Supp. 3d at 662 (citing *Reid v. Ayers*, 138 N.C. App. 261, 266 (N.C.App. 2000)). The ITPA expressly provides that a violation of § 75–62 of the Act, which addresses social security number protection, is also a violation of the UDTPA. N.C. Gen. Stat. § 75-62(d). However, the ITPA provides specifically that there is no private right of action available to an individual unless the individual has been injured as a result of the violation. N.C. Gen. Stat. § 75-65(i)("[N]o private right of action may be brought by an individual for a violation of this section unless such individual is injured *as a result* of the violation."); *see also Rogers*, 243 F. Supp. 3d at 663 (dismissing a clam under the ITPA where the plaintiff failed to demonstrate any damages resulting from the timing of the notification of a security breach.)

Here, there are no specific allegations that any alleged damages could have been avoided if DD-USA discovered and notified Plaintiffs about the data breach earlier than February 2025. *See* [D.E. 18] pp. 39-42. Without any allegations specifying damages that were supposedly caused due to the timing of the notification of the data breach, the Complaint does not sufficiently state a violation of the ITPA. *See Rogers*, 243 F. Supp. 3d at 663 (concluding that the plaintiff has failed to plead that he suffered any damages as a proximate result of the defendant's alleged ITPA violation for failing to notify him of a security breach). Plaintiffs have therefore failed to state a viable ITPA claim under the UDTPA against DD-USA, and as a result, Count III should be dismissed.

### ***E. Plaintiffs Have Failed to Properly Plead an Unjust Enrichment Claim.***

Plaintiffs' claim for unjust enrichment fails because they have not adequately pled the elements to support such a claim.

Unjust enrichment "was devised by equity to exact the return of or payment for" a measurable benefit "where it would be unfair for the recipient to retain [it] without the contributor being repaid or compensated." *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp. 3d 609, 629 (W.D.N.C. 2014). In order to state a viable claim for unjust enrichment under North Carolina law, Plaintiffs must establish:

> First, one party must confer a benefit upon the other party. Second, the benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. Third, the benefit must not be gratuitous. Fourth, the benefit must be

> measurable. Last, the defendant must have consciously accepted the benefit.

*JPMorgan Chase Bank, National Ass'n v. Browning*, 230 N.C.App. 537, 541–42 (N.C. 2013) (emphasis omitted) (internal citation omitted).

"[T]he mere fact that one party benefitted at the expense of another is not sufficient to invoke [unjust enrichment] unless all five of the elements of the *prima facie* case are met." *Butler v. Butler*, 239 N.C.App. 1, 11–12 (N.C.App. 2015). North Carolina courts "typically contemplate[] unjust enrichment as an appropriate remedy only in situations where the complaining party intentionally and deliberately undertook an action with an expectation of compensation or other benefit in return." *Id.* at 12. The doctrine of unjust enrichment applies in "circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Homeq v. Watkins*, 572 S.E.2d 871, 873 (2002) (quoting *Collins v. Davis*, 315 S.E.2d 759, 761 (1984)). "In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." *Id.* (quoting *Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 266 (2000)).

1. <u>Plaintiffs Have Failed to Adequately Allege that They Conferred any Benefit Upon DD-USA as Required to State a Claim for Unjust Enrichment.</u>

Without providing any details of "revenue generated by Plaintiffs' and Class Members' employment," Plaintiffs claim that DD-USA profited from such. [D.E. 18] p. 43. Plaintiffs allege, DD-USA funds its data security measures entirely from its

general revenue, including revenue generated by Plaintiffs' and Class Members' employment. *Id.* Plaintiffs then take the conclusory position that DD-USA failed to provide adequate cybersecurity practices, and therefore, must have retained the benefits of "the amounts of revenue generated from Plaintiffs' and Class Members' employment," which instead should have been spent on more comprehensive data security measures. *Id.*

But even if all of this were true and even if Plaintiffs had properly supported these claims with factual assertions (they have not), their theory fails because any alleged benefit was conferred by DD-USA's customers and/or clients, **not** Plaintiffs. *See Browning* at 541–42; *see also Barrett v. Coston*, 261 N.C. App. 311, 315, 820 S.E.2d 573, 575 (2018) (affirming order granting motion to dismiss when "the benefit was allegedly conferred upon Defendant by" someone other than the plaintiff). As alleged, DD-USA specializes in the "distribution of tractors and utility vehicles, engines, attachments, implements, and accessories." [D.E. 18] ¶ 2. And indeed, Plaintiffs fail to plausibly plead **any** circumstances under which DD-USA would receive revenue generated by Plaintiffs employment with the "expectation of compensation of other benefit in return," let alone circumstances plausibly related to Plaintiffs conveying PII or PHI to DD-USA. *Butler v. Butler*, 768 S.E.2d 332, 339 (2015); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("[B]are assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").

2. <u>Plaintiffs have Failed to Adequately Allege that they Conferred a **Measurable Benefit** Upon DD-USA when they Allegedly Provided it with their PHI or PII.</u>

Plaintiffs' unjust enrichment claim also fails as a matter of law because they have not adequately pled that the benefit they conferred upon DD-USA was **<u>measurable</u>**. Under North Carolina law, measurability is not just a matter of damage determination, but a *prima facie* element of unjust enrichment. *See Browning* at 541–42. Thus, and at best, the purported sharing of PHI or PII is "better understood as necessary to conduct business operations, not a good whose inherent value was extracted" by DD-USA. *Johnson v. Nice Pak Products, Inc.*, 736 F. Supp. 3d 639, 652 (S.D.Ind. 2024) (dismissing unjust enrichment claim under Indiana law because conferring PII on an employee is not a measurable benefit).

In support of their claim for unjust enrichment, Plaintiffs contend that they "and Class Members conferred a benefit on [DD-USA] by turning over their valuable Private Information to [DD-USA]… ." [D.E. 18] p. 42. According to Plaintiffs, DD-USA requires that employees provide their PHI or PII as a condition of employment. *Id.* at ¶ 21. DD-USA then allegedly "used the Private Information of Plaintiffs and Class Members for business purposes," though Plaintiff fails to actually identify this purported business purpose. *Id.* at ¶ 205.

This theory necessarily fails because Plaintiffs have not identified **<u>any measurable</u>** benefit conferred on DD-USA as required to state a viable unjust enrichment claim. Even assuming, *arguendo*, that PHI or PII was required as a condition of employment, Plaintiffs do not allege or explain how that was anything

more than an administrative or regulatory requirement incidental to their employment. Many employers also require prospective employees to pass background checks, perform drug tests, appear for interviews, and fill out administrative forms. Certainly, these types of administrative tasks do not themselves officiously confer a measurable benefit on the prospective employer. Indeed, PHI or PII is not inherently beneficial or valuable and only supports an unjust enrichment claim when defendants profit from its use or storage. *See, e.g., In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 413 (E.D. Va. 2020). Here, Plaintiffs do not allege that DD-USA profited from the use or storage of their PII or PHI. [D.E. 18] pp. 42-44. Nor does Plaintiffs' PHI or PII have an independent monetary value. *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022).

Likewise, absent any clear allegation of the "business purpose" for which DD-USA allegedly required its employees' PHI or PII, Plaintiffs have failed to present a claim for any measurable benefit conferred on DD-USA. In fact, Plaintiffs have not presented any concept through which they can demonstrate how an administrative condition of employment is measurable at all. Plaintiffs' unjust enrichment claim fails for these reasons and should be dismissed.

### ***F. DD-USA Owes Plaintiffs No Fiduciary Duty That it Could Breach.***

DD-USA does not owe its employees, like Plaintiffs, a fiduciary duty to safeguard PHI or PII as alleged. Plaintiffs' breach of fiduciary claim (Count V) should be dismissed as a result.

A fiduciary relationship is a necessary element of a breach of fiduciary duty claim under North Carolina law. *French Broad Place, LLC v. Asheville Sav. Bank, S.S.B.*, 259 N.C. App. 769, 787 (2018). Such relationship exists "wherever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *White v. Consol. Planning, Inc.*, 166 N.C.App. 283, 293 (N.C. Ct. App. 2004). In all but extraordinary circumstances, "the relation of employer and employee is not one of those regarded as confidential." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 708 (2001). To state such a claim, Plaintiffs must allege: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached the fiduciary duty; and (3) the breach of the fiduciary duty was a proximate cause of injury to the plaintiff. *Green v. Freeman*, 749 S.E.2d 262, 268 (2013).

The North Carolina Supreme Court has made clear that "[t]he list of relationships that we have held to be fiduciary in their very nature is a limited one, and we do not add to it lightly." *Sykes v. Health Netwrok Sol., Inc.*, 828 S.E.2d 467, 475 (2019). Thus, "general contractual relationships do not typically rise to the level of fiduciary relationships." *Id.* Similarly, the relationship between employer and employee is generally not a fiduciary relationship. *Capiau*, 2024 WL 3747191, at *13; *Dalton*, 353 N.C. at 651; *Curry v. Schletter Inc.*, No. 17-0001, 2018 WL 1472485, at *5 (W.D.N.C. Mar. 26, 2018) (dismissing breach of fiduciary duty claim against employer for allegedly failing to safeguard employee PII). And the fact that DD-USA ***<u>might</u>***

collect its employees' PII, even as a condition of employment, does not change this. Rather, to find a fiduciary relationship in such a situation "would swallow the rule." *Capiau*, 2024 WL 3747191, at *13 (dismissing breach of fiduciary duty claim against employer for allegedly mishandling PII); *Langley v. Autocraft, Inc.*, No. 22 CVS 9346, 2023 WL 5018021, at *4 (N.C.Super. Aug. 7, 2023) ("A fiduciary relationship does not arise between an employee and his or her employer by operation of law, and only in rare circumstances does such a duty arise from the particular facts of an employment relationship.").

Like in *Capiau*, the fact that DD-USA, as an employer, holds its employees' PII or PHI does not, on its own, create a fiduciary relationship. As such, and like in *Capiau*, the claims asserted here are insufficient as a matter of law to state a viable breach of fiduciary claim against DD-USA and therefore Count V of the Complaint should be dismissed.

### ***G. Plaintiffs' Declaratory Judgment Claim Fails Because There Is No Live or Justiciable Controversy Between the Parties.***

Plaintiffs' declaratory judgment claim (Count VI) should be dismissed because Plaintiffs have not pled any factual allegations to demonstrate that a live controversy exists between the parties that a declaratory judgment would resolve.

To state a claim for relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs must allege a dispute that is: (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a

hypothetical state of facts." *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 414 (E.D. Va. 2020). The central question, then, is whether "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941)).

Here, Plaintiffs allege in a conclusory fashion that "Defendant's data security measures remain inadequate" and "Plaintiffs continue to suffer injury as a result of the compromise of his Private Information and the risk remains that further compromises of his Private Information will occur in the future." [D.E. 18] p. 49. However, Plaintiffs make no allegations whatsoever that this controversy remains ongoing. Rather, Plaintiffs' claims are all predicated upon a data breach that has already occurred. *See id.* at pp. 48-51. But a past data breach is insufficient to state a viable claim for declaratory claim because the controversy is neither live or ongoing. *See, e.g. Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319, at *9 (W.D. Ky. 2022) (dismissing declaratory judgment claim predicated on a past data breach since there were no allegations the breach or injuries are still ongoing); *Lochridge v. Quality Temp. Servs., Inc.*, 2023 WL 4303577, at *8 (E.D. Mich. 2023) (agreeing with the defendant's argument that the plaintiff cannot seek injunctive relief designed to prevent a future breach, only relief that would address the breach that already occurred, and dismissing the declaratory judgment claim.); *Hall v. Centerspace, LP*,

2023 WL 3435100, at *4 (D. Minn. 2023) (court found no risk of a second data breach where the plaintiff failed to suggest "[defendant] is currently being targeted by hackers, or that something about their operations makes them uniquely vulnerable to incursions."). Thus, Plaintiffs have failed to state a viable declaratory judgment claim against DD-USA and Count VI should be dismissed.

## CONCLUSION

Plaintiffs' claims fail as a matter of law and pursuant to Fed. R. Civ. P. 12(b)(6), DD-USA respectfully requests that Plaintiffs' Complaint be dismissed with prejudice.

Dated: September 5, 2025

THARRINGTON SMITH, LLP

*/s/ Colin Shive*
Colin A. Shive
N.C. Bar No. 43202
F. Hill Allen
N.C. Bar No. 18884
150 Fayetteville Street, Suite 1900
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
hallen@tharringtonsmith.com
cshive@tharringtonsmith.com

MCGLINCHEY STAFFORD, PLLC

/s/ *Megan S. Ben'Ary*
Megan S. Ben'Ary
Virginia Bar No. 47439
1275 Pennsylvania Ave. NW #420
Washington, DC.
202-802-9949
202-217-2215
Email: mbenary@mcglinchey.com
Special Appearance Counsel

/s/ *James W. Sandy*
James W. Sandy
Ohio Bar No. 0084246
3401 Tuttle Rd, Ste 200
Cleveland, OH 44122
216-378-9911
216-916-4162
Email: jsandy@mcglinchey.com
Special Appearance Counsel

*Counsel for Defendant Daedong-USA, Inc.*
*(Kioti Tractor Divison)*

## CERTIFICATE OF COMPLIANCE

The undersigned, in accordance with the local civil rules for the Eastern District of North Carolina, certifies that the foregoing brief (exclusive of case caption, any index, table of contents, table of authorities, signature blocks, and any required certificates) contains 5,959 words, as reported by word-processing software.

This 5th day of September 2025.

THARRINGTON SMITH, LLP

*/s/ Colin Shive*
Colin A. Shive
N.C. Bar No. 43202

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed in this case with the clerk of the court and served on this 5th day of September, 2025, through the court's CM/ECF system, which will send notification of this filing to all counsel of record.

THARRINGTON SMITH, LLP

*/s/ Colin Shive*
Colin A. Shive
N.C. Bar No. 43202
*Counsel for Defendant Daedong-USA, Inc. (Kioti Tractor Divison)*