UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| IN RE DAEDONG-USA DATA SECURITY INCIDENT LITIGATION | CASE NO.: 5:25-CV-00216-D<br><br>PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (DOC. 23) |
|---|---|

Plaintiffs Andrew K. Khoune, Brian Pollard, and John Viverette, ("Plaintiffs"), individually and on behalf of all similarly situated persons, file this Response in Opposition to Defendant Daedong-USA, Inc. (Kioti Tractor Division)'s ("DD-USA" or "Defendant") Motion to Dismiss (Doc. 23) and show the Court as follows:

## INTRODUCTION

On January 23, 2024, DD-USA ("DD-USA" or "Defendant") experienced a cybersecurity incident that allowed unauthorized third parties to access Defendant's systems and the information stored therein. However, Defendant waited more than a year to begin notifying its employees that they were at risk for identity theft and fraud as a result of a data breach.

DD-USA collected Plaintiffs' personally identifiable information and protected health information (collectively "Private Information") as a condition of their employment, promising to secure it. But—unfortunately for Plaintiffs and at least 10,643 other current and former employees—DD-USA never implemented the security safeguards needed to fulfill that promise. As a result, hackers bypassed DD-USA's systems and stole employees' Private Information. The stolen Private Information included employees' names, contact information, phone number, postal

address, date of birth, driver's license, passports, Social Security number, bank account and payment card numbers, medical and health related information, health insurance information, usernames and passwords, and work-related information. With their privacy invaded, Plaintiffs worried over what other information DD-USA's breach had exposed and how it might harm them.

Though DD-USA also recognized the threat its breach posed, it waited until February 20, 2025—thirteen months after the Data Breach—to begin notifying victims. In its letter, it warned victims to "remain vigilant by reviewing your account statements and monitoring your free credit reports", further advising them to "be cautious of any unsolicited communications that ask for your personal information" and "avoid clicking on links or downloading attachments from suspicious emails." Concerned, Plaintiffs did just that. But that alone could not eliminate the harm they have and will suffer, as DD-USA's breach exposed information they that cannot change, like their Social Security numbers and dates of birth. As a result, Plaintiffs sued DD-USA to compensate them for the harm its breach has and will cause them.

In response, DD-USA's motion to dismiss repudiated what the company said in its breach notice. After telling Plaintiffs to "remain vigilant," DD-USA's motion backtracks and dismisses the concern as "speculative." In fact, DD-USA's motion reads like its data breach caused no harm at all. But it did, and the harm it caused supports Plaintiffs' right to sue DD-USA, except as to their breach of fiduciary duty claim.

DD-USA violated its duties to safeguard Plaintiffs' Private Information under common law and statutory principles, entitling them to sue DD-USA under tort, contract, and statutory claims. As a result, the Court should deny DD-USA's motion and allow Plaintiffs to proceed with their claims, except as to breach of fiduciary duty, or allow Plaintiffs leave to amend their complaint if the Court finds it is necessary to the maintenance of the remaining claims.

## FACTUAL BACKGROUND

### A. DD-USA Collects Employee Records and Promises to Protect Them

DD-USA specializes in the manufacturing and distribution of tractors and utility vehicles, engines, attachments, implements, and accessories. Doc. 18, Consolidated Amended Complaint ("Compl.") ¶ 2. In the course of its business, DD-USA collects and maintains the Private Information of its current and former employees. *Id.* ¶ 21. This highly sensitive data includes employees' names, contact information, phone number, postal address, date of birth, driver's license, passports, Social Security number, bank account and payment card numbers, medical and health related information, health insurance information, usernames and passwords, and work-related information. *Id.* ¶ 28. Recognizing the sensitive nature of this information and its duties to guard employees' Private Information, DD-USA promises to protect it and safeguard the data in accordance with its internal policies, state law, and federal law. *Id.* ¶ 22. Indeed, DD-USA advertises in its privacy policy that "The security of Your Personal Data is important to Us" and that it uses "commercially acceptable means to protect Your Personal Data. *Id.* ¶ 24.

Despite these numerous assurances, DD-USA never implemented the security safeguards needed to fulfill that promise. *Id.* ¶ 25. As Plaintiffs detail, DD-USA "failed to properly implement basic data security practices." *Id.* ¶ 59. As a result, DD-USA left its employees' Private Information an unguarded target for theft and misuse.

### B. DD-USA Breaches Its Duties

On January 23, 2024, DD-USA experienced a breach when criminals infiltrated its network and accessed at least 10,643 of Defendant's current and former employees' Private Information. *Id.* ¶¶ 26-27. However, it is unknown how long hackers had unfettered access to Defendant's

systems prior to encrypting these files as DD-USA has not been forthcoming about when they discovered the breach. *Id.* ¶ 27. Despite learning about the breach and its impact on current and former employees and their children, DD-USA delayed notifying them about it for a shocking *thirteen months*, all while Plaintiffs and the rest of DD-USA's former and current employees were at risk for identity theft and fraud. *Id.* ¶ 29. When DD-USA admitted to the breach in February 2025, it not only acknowledged the breach's scale and how it threatened to harm employees but also cautioned breach victims to "remain vigilant by reviewing your account statements and monitoring your free credit reports." *Id.* ¶¶ 31.

**C. DD-USA's Breach Harmed Plaintiffs and the Class**

DD-USA's breach harmed Plaintiffs and threatens to harm them again, requiring them to spend resources mitigating that risk. The breach exposed their Private Information, information criminals can use to commit fraud and steal their identity. *Id.* ¶ 136. As a result, they must spend resources to mitigate that risk, something DD-USA directed them to do in its breach notice. *Id.* ¶ 134. In the aftermath of the Data Breach, Plaintiffs were damaged by the compromise of their private information and now face continued and imminent risk of identity theft and fraud. *Id.* ¶ 132. Plaintiffs must now spend time and effort to mitigate these risks for the rest of their lives. *Id.* ¶ 133. Because Plaintiffs cannot retrieve their Private Information from criminals or eliminate the risk they face as a result of the Data Breach, they now suffer from "anxiety, sleep disruption, stress, fear, and frustration"—emotional injuries that he claims in his complaint. *Id.* ¶¶ 98, 112, 126.

## LEGAL STANDARD

In considering a Rule 12(b)(6) motion, "the Court accepts the allegations in the Complaint as true and construes them in the light most favorable to Plaintiff." *Oppenheimer v. Morgan*, No. 1:19-cv-00002-MR, 2019 U.S. Dist. LEXIS 106944, at *2 (W.D.N.C. June 26, 2019). Under Rule 12(b)(6), a complaint should be dismissed only if the facts alleged fail to state a "plausible"

claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). And the Court must "draw all reasonable inferences in favor of the plaintiff[,]" when evaluating a 12(b)(6) motion. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

## ARGUMENT

### A. Plaintiffs Sufficiently Pled Their Negligence Claim

DD-USA violated its duty to protect Plaintiffs' Private Information, entitling them to claim damages under negligence theories. Negligence claims have four elements: duty, breach, causation, and damages. *Estate of Long v. Fowler*, 270 N.C. App. 241, 251, 841 S.E.2d 290, 299 (2020). However, DD-USA challenges Plaintiffs' negligence claim only on the grounds that it is barred by the economic loss doctrine. Doc. 25 ("Mem.") at 3-5. This is not so.

In determining whether the economic loss doctrine precludes a negligence claim, courts look at whether the losses are "purely economic" in nature. *Weaver Cooke Constr., LLC v. Randolph Stair & Rail Co.* 2017 U.S. Dist. LEXIS 19442, No. 5:14-CV-709-BR, 2017 U.S. Dist. LEXIS 19442, at *4 (E.D.N.C. Feb. 7, 2017). Here, Plaintiffs plead several non-economic losses including time and effort spent mitigating the effects of the data breach, emotional harms, a loss of privacy from exposure of their personal information, and increased risk of fraud and identity theft. Compl. ¶¶ 129, 132-136. Thus, the economic loss doctrine is inapplicable. Courts in the Fourth Circuit and around the country have found that similar injuries are noneconomic in nature. *See, e.g., Gordon v. Zeroed-In Tech., LLC*, No. 23-3284-BAH, 2025 U.S. Dist. LEXIS 58031, at *45 (D. Md. Mar. 26, 2025) ("an individual's loss of control over the use of their identity due to a data breach and the accompanying impairment to the value of their PII constitutes non-economic harms"); *In re Data Breach Sec. Litig. Against Caesars Ent., Inc.*, No. 2:23-cv-01447-ART-BNW, 2025 U.S. Dist. LEXIS 159427, at *33 (D. Nev. Aug. 15, 2025) (finding loss of control over use of their identity, loss of time, and imminent risk of identity theft are all non-

economic harms); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (plaintiffs' alleged loss of time was a non-economic injury and therefore economic loss rule did not bar negligence claim); *McLaughlin v. Taylor Univ.*, No. 1:23-cv-00527-HAB-SLC, 2024 U.S. Dist. LEXIS 172249, at *17 (N.D. Ind. Sep. 23, 2024) (alleged damages for lost time, in part, were not purely economic).

Further, although North Carolina has not confirmed whether emotional harm can be claimed as damages in data breach cases, courts around the country *have* confirmed that right. *See, e.g.*, *Dannunzio v. Liberty Mut. Ins. Co.*, No. 21-1984, 2021 U.S. Dist. LEXIS 215255, at *9 (E.D. Pa. Nov. 5, 2021; *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 633 (S.D. Ohio 2020); *Desue v. 20/20 Eye Care Network, Inc.,* No. 21-CIV-61275-RAR, 2022 U.S. Dist. LEXIS 45936, at *18 (S.D. Fla. Mar. 15, 2022) ("allegations of emotional distress, coupled with the substantial risk of future harm, are sufficiently concrete to establish standing in a claim for damages.").

Moreover, the economic loss doctrine applies only when a contract governs a party's claim, and the existence of that contract is not a matter the Court should resolve at the pleading stage. *Curry v. Schletter Inc.*, No. 1:17-CV-0001-MR-DLH, 2018 WL 1472485, at *4 (W.D.N.C. Mar. 26, 2018) (declining to apply the economic loss doctrine when the source of duty was disputed). Thus, taking these allegations in the light most favorable to Plaintiffs, it is clear that their negligence claim is not barred by the economic loss doctrine and Defendant's motion to dismiss should be denied.

**B. Plaintiffs Sufficiently Pled the Existence and Breach of Contracts to Which Plaintiffs Were Intended Third-Party Beneficiaries**

Defendant argues Plaintiffs' third-party beneficiary contract claim fails because the Complaint is missing "detailed descriptions of these purported contracts, who the contracts were

with, or what express obligations [Defendant] purportedly had" under the contracts. Mem. at 7. But Defendant has not cited any authority establishing Plaintiffs are required to attach the allegedly breached contracts to their complaint in order to state a claim. That is because no such requirement exists. *See Cummings v. Energy Int'l Servs., LC*, 271 F. Supp. 3d 1182, 1189 (E.D. Cal. 2017) ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."). Defendant cites to cases that conspicuously do not mention any such requirement. *See* Mem. at 7. Plaintiffs have adequately alleged in their Complaint that Defendant entered into contracts to provide sufficient safeguards to private information entrusted to it. Compl. ¶ 178. Numerous courts have found that requiring plaintiffs to plead specific language of contracts to which they were not party is at minimum inconsistent with the motion to dismiss standard—perhaps even impossible. *See, e.g., Stasi v. Inmediata Health Grp*. Corp., 501 F. Supp.3d 898, 920 (S.D. Cal 2020); *Johnson v. Nissa N. Am., Inc*., 272 F. Supp. 3d 1168, 1181 (N.D. Cal. 2017) ("While [plaintiff] does not cite specific provisions from the alleged contracts between [defendant] and its dealers, it would be inappropriate to impose such a duty at the pleadings stage, prior to the benefit of discovery."). There is no reasonable way for Plaintiffs to know the terms of Defendant's contracts with its clients, and this Court should conclude that Plaintiffs' allegations are sufficient at this early stage of the proceedings.

### C. Plaintiffs Sufficiently Pled Their Claim for North Carolina's Unfair and Deceptive Trade Practices Act (UDTPA)

Under the UDTPA, it is unlawful to engage in "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). To state a claim under the UDTPA, a plaintiff must allege that: (1) the defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). Plaintiffs have adequately alleged

that Defendant committed unfair and deceptive acts or practices by: (1) failing to implement and maintain reasonable security and privacy measures; (2) failing to identify foreseeable security and privacy risks; (3) failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' Private Information; (4) failing to comply with applicable laws and regulations; and (5) omitting and concealing its failures to adequately secure the Private Information. Compl. ¶ 186. Courts have repeatedly permitted claims for unfair trade practices based on inadequate data security measures in similar circumstances. *See In re Equifax, Inc.*, 362 F. Supp. 3d 1295, 1323 (N.D. Ga. 2019) ("[F]ailure to maintain reasonable and appropriate data security for consumers' sensitive personal information can constitute an unfair method of competition in commerce."); *McCreary v. Filters Fast LLC* 2021 U.S. Dist. LEXIS 133608, No. 3:20-cv-595-FDW-DCK, 2021 U.S. Dist. LEXIS 133608, at *19 (W.D.N.C. July 19, 2021)(denying motion to dismiss claims under North Carolina UDTPA in the data breach context). Defendant also argues that Plaintiffs' UDTPA claim should be dismissed because of the employer-employee relationship, which Defendant contends falls outside the scope of "commerce" under the UDTPA. This argument misunderstands the applicable law. While the UDTPA has certain exceptions, the employer-employee relationship is not one of them. See N.C.G.S. § 75-1.1. There is no doubt that Defendant was engaged in commerce in North Carolina, as it is engaged in the manufacturing and distribution of tractors and utility vehicles, engines, attachments, implements, and accessories. Compl. ¶ 2. The collection and maintenance of its employees' Private Information is an integral part of Defendant's commercial activities, without which it could not function. Courts assessing UDTPA claims have had no issue denying motions to dismiss claims brought by a defendant's employees raising similar allegations as those here. *See Capiau v. Ascendum Mach., Inc.*, No. 3:24-cv-00142-MOC-SCR, 2024 U.S. Dist. LEXIS 142393, at *36-37, 2024 WL

3747191 (W.D.N.C. Aug. 8, 2024) (denying motion to dismiss employees' UDTPA claim where alleged unfair business practices were "[d]efendant's failure to implement and maintain adequate cybersecurity measures and to warn Plaintiff of the breach"); *Curry v. Schletter* Inc., No. 1:17-cv-0001-MR-DLH, 2018 U.S. Dist. LEXIS 49442, at *14-17, 2018 WL 1472485, at *5 (W.D.N.C. 2018) (denying motion to dismiss UDTPA claims arising from a data breach in the employment context, finding that the plaintiffs had sufficiently alleged that the defendant's actions constituted unfair or deceptive trade practices in or affecting commerce). Thus, Plaintiffs have sufficiently pled a violation of the UDTPA.

Furthermore, Plaintiffs have adequately alleged violations of the North Carolina Identity Theft Protection Act ("NCITPA"), which constitute *per se* violations of the UDTPA. The NCITPA expressly provides that a violation of N.C. Gen. Stat. § 75-62 is also a violation of the UDTPA. *See* N.C. Gen. Stat. § 75-62(d). Plaintiffs have alleged that Defendant violated § 75-62(a)(1) by intentionally communicating their Social Security numbers to the general public and § 75-62(a)(6) by intentionally disclosing their Social Security numbers to a third party without written consent Compl. ¶ 194. As the court in *Curry* noted, a plaintiff states a viable claim under § 75- 62(a)(1) by alleging that the defendant "communicat[ed] the Plaintiffs' Social Security numbers to an unknown cybercriminal, thereby rendering the Plaintiffs' otherwise protected and secure information completely unprotected and non-secure." *Curry*, 2018 WL 1472485, at *5. Plaintiffs have made precisely these allegations here. Moreover, Plaintiffs have sufficiently alleged extensive damages, the challenge to which requires development of the factual record and thus cannot be resolved at the Rule 12(b)(6) stage.

### D. Plaintiffs Have Sufficiently Pled an Unjust Enrichment Claim

Plaintiffs have adequately alleged their claim for unjust enrichment. An unjust enrichment claim must allege "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Capiau,* 2024 WL 3747191, at *12 (W.D.N.C. Aug. 9, 2024) (*citing Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enter., LLC*, 226 N.C.App. 483, 742 S.E.2d 555, 561 (N.C. Ct. App. 2013)) (editing marks in original). Plaintiffs' unjust enrichment claim is pled in the alternative to Plaintiffs' contract claim. Compl. ¶ 200. Plaintiffs have adequately alleged each element identified above. *Capiau* confirms this result, holding a data breach plaintiff successfully alleged an unjust enrichment claim under similar circumstances.

First, Plaintiffs have alleged they "conferred a benefit on Defendant by turning over their valuable Private Information to Defendant." Compl. ¶ 201. The surrender of Plaintiffs' Private Information was a condition of employment imposed by Defendant for Defendant's benefit. *Id.* ¶¶ 21, 88, 102, 116. Defendant benefitted from the Private Information because Plaintiffs' Private Information has inherent value and because Defendant received Plaintiffs' labor which, in turn, permitted Defendant to earn revenues it would not have been able to earn without Plaintiffs' labor. *Id.* ¶¶ 61, 83, 204, 205.

Defendant argues Plaintiffs failed to confer a benefit on Defendant because the benefits Defendant received came through Defendant's customers, but this position simply ignores Plaintiffs' allegations that those benefits, including revenues, were made possible through Plaintiffs' labor. *Id.* ¶¶ 202, 204, 205. Notably, the benefit conferred under an unjust enrichment theory need not be monetary. *Capiau*, 2024 WL 3747191, at *12. Moreover, Defendant appreciated the benefit Plaintiffs conferred on it. Compl. ¶ 205. As noted in *Capiau*, "Defendant cannot be

heard to argue that Defendant was indifferent to Plaintiff's provision of PII, since such provision was a condition of Plaintiff's employment." *Capiau*, 2024 WL 3747191, at *12.

Finally, Plaintiffs alleged they provided their Private Information with the expectation Defendant would provide cybersecurity measures sufficient to protect their Private Information from unauthorized access and disclosure. Compl. ¶ 201. The cybersecurity measures would be funded through revenues made possible by Plaintiffs' employment. *Id.* ¶¶ 202–04. Defendant failed to provide such protection. *Id.* ¶¶ 201, 204, 205. Plaintiffs would not have agreed to provide their Private Information to Defendant had they known Defendant would fail to adequately protect it. *Id.* ¶ 206. Accordingly, Plaintiffs have adequately alleged their unjust enrichment claim against Defendant.

Ignoring *Capiau*, Defendant cites *In re Cap. One Consumer Data Sec. Breach Litig*., in which the court dismissed an unjust enrichment claim in a data breach case against *one* defendant due to the existence of an "express contract between the parties covering the conduct at issue." 488 F. Supp. 3d 374, 412 (E.D. Va. 2020). However, the court refused to dismiss the unjust enrichment claim against a second defendant where the express contract was not an issue. *Id.* In doing so, the court noted, "courts have concluded that the failure to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards, thereby making it "inequitable and unconscionable" to permit defendant to retain the benefit of the data (and any benefits received therefrom), while leaving the plaintiff party to live with the consequences." *Id.*

Accordingly, *In re Cap. One Consumer Data Sec. Breach Litig*., supports Plaintiffs' unjust enrichment claim, particularly since the successfully alleged facts were highly similar to those

alleged by Plaintiffs in the current case. *See id.* at 412–13; *see also Whitfield v. ATC Healthcare Servs.*, No. 22-cv-5005 at 14 (E.D. N.Y. Aug 22, 2023) (unjust enrichment pled where "Defendant benefitted from receiving Plaintiff's PII and PHI and her subsequent employment, yet failed to protect that information."); *Bowen v. Paxton Media Grp.*, No. 5:21-cv-143, 2022 WL 4110319, at *7 (W.D. Kent. Sept. 8, 2022) (denying motion to dismiss unjust enrichment claim where Defendant accepted benefits accompanying plaintiffs' data without adequately protecting it). The result should be the same here, and Plaintiffs should be permitted to pursue their alternative claim for unjust enrichment.

### E. Plaintiffs Have Sufficiently Pled a Claim for Declaratory Relief

Finally, Defendant incorrectly argues Plaintiffs' claim for declaratory relief should be dismissed because "Plaintiffs have not pled any factual allegations to demonstrate that a live controversy exists between the parties that a declaratory judgment would resolve." Mem. at 20. However, the facts alleged by Plaintiffs are sufficient to support their requests for injunctive and declaratory relief.

"The Declaratory Judgment Act gives the federal courts power '[i]n a case of actual controversy within its jurisdiction' to 'declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 846 (E.D. Va. 2014) (citing 28 U.S.C. § 2201(a)). "Supreme Court precedent requires that such actions be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)) (internal quotation and editing marks omitted). "An injunction and a declaratory judgment are forms of relief," so

Plaintiffs may seek declaratory relief even if this Court were to dismiss Plaintiffs' separate claim for declaratory judgment asserted in Count VI. *Wittmeyer v. Heartland All. for Hum. Needs & Rts*., No. 23 CV 1108, 2024 WL 182211, at *7 (N.D. Ill. Jan. 17, 2024).

Plaintiffs have thoroughly established, *supra*, that there is a definite and concrete controversy between the parties. Plaintiffs recognize that *Capiau* dismissed the plaintiff's request for declaratory relief because the plaintiff failed to show a continued risk of another data breach resulting from the defendant's continued retention of his private information, particularly considering that defendant's notice of data breach which specifically stated that it had strengthened its data security policies. 2024 WL 3747191, at *9. However, in the current case, Plaintiffs have alleged that Defendant continues to possess Plaintiffs' Private Information and that Defendant's existing data security measures remain inadequate and do not comply with Defendant's explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect its employees' Private Information. Compl. ¶¶ 232, 233, 234(b). Plaintiffs have also requested corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect its employees' Private Information, including providing lifetime credit monitoring and identity theft insurance. *Id*. at ¶ 235.

Accordingly, Plaintiffs should be permitted to pursue their requests for declaratory relief based on their allegations their Private Information continues to be at risk both through Defendant's inadequate retention of their Private Information and the potential for future identity theft as a result of the data breach. Defendant's request for dismissal should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Defendant's Motion to Dismiss, except as to their breach of fiduciary duty claim, or allow Plaintiffs leave to amend their complaint if the Court finds it is necessary to the maintenance of the remaining claims.

DATED: September 26, 2025 Respectfully submitted,

By: /s/ *Ruth Sheehan*________
Ruth A. Sheehan
NC State Bar No. 48069
ras@rhinelawfirm.com
Joel R. Rhine
NC State Bar No. 16028
jrr@rhinelawfirm.com
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Road, Suite 300
Wilmington, North Carolina 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

*Local Civil Rule 83.1(d) Attorney for Plaintiff and the Proposed Class*

Sarah A. Knox, NCSB #58780
**Hunter & Everage, PLLC**
Post Office Box 25555
Charlotte, North Carolina 28229
Telephone: 704-377-9157
Facsimile: 704-377-9160
Email: sak@hunter-everage.com

**EKSM, LLP**
Leigh S. Montgomery (*via* special appearance)
Texas Bar No. 24052214
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
lmontgomery@eksm.com

**THE VAN WINLE LAW FIRM**
David Wilkerson
NCSB No. 35742
Email: dwilkerson@vwlawfirm.com
11 N Market Street
Asheville, NC 28801
Telephone (828) 258-2991

Daniel Srourian, Esq. (special appearance to be filed)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

Brittany Resch (*via* special appearance)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
bresch@straussborrelli.com

*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF COMPLIANCE WITH L.R. 7.2(F)(3)**

In accordance with Local Rule 7.2(f)(3), I hereby certify this Response and Memorandum in Opposition to Defendant's Motion to Dismiss is in compliance with the applicable word limit and contains approximately 3,946 total words.

*/s/ Ruth Sheehan*

**CERTIFICATE OF SERVICE**

I hereby certify Plaintiffs Response and Memorandum in Opposition to Defendant's Motion to Dismiss was served upon all counsel of record in this matter via the CM/ECF system, in accordance with the Rules.


By: /s/ *Ruth Sheehan*________
Ruth A. Sheehan
NC State Bar No. 48069
ras@rhinelawfirm.com
Joel R. Rhine
NC State Bar No. 16028
jrr@rhinelawfirm.com
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Road, Suite 300
Wilmington, North Carolina 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

*Local Civil Rule 83.1(d) Attorney for Plaintiff and the Proposed Class*