IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-cv-00216-D-KS

IN RE: DAEDONG-USA DATA SECURITY INCIDENT LITIGATION

**DEFENDANT DAEDONG-USA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT**

## I. INTRODUCTION

Plaintiffs'[1] unsupported and conclusory assertions in their Opposition [Doc. No. 29] to DD-USA's Motion to Dismiss (the "Motion") are insufficient to avoid dismissal of their claims. Rather, Plaintiffs have failed to state a viable claim for relief and their Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because:

- Their negligence claim (Count I) is barred by the economic-loss doctrine as they have failed to plead any facts to support any damages beyond pure economic loss as a result of the Data Breach;
- As well, Plaintiffs have failed to properly plead facts to establish that they are intended third-party beneficiaries under any contract as required to state a breach of third-party beneficiary claim (Count II);
- Courts have universally rejected the claim that an employer-employee relationship can give rise to a UDTPA claim nor do Plaintiffs' contentions in support of an ITPA violation support a UDTPA claim (Count III);
- Plaintiffs have failed to adequately allege any benefit conferred on DD-USA as required to state an unjust enrichment claim (Count IV) and, moreover, they cannot change the basis of their claims in their Opposition. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing."); and
- Declaratory relief (Count V) is not proper as no live or justiciable controversy exists between the parties.

## II. ARGUMENT

### *A. Plaintiffs' Negligence Claim is Barred by the Economic Loss Doctrine.*

[1] Terms and abbreviations used herein are given the same meaning as in DD-USA's Motion. [Doc. No. 25]

As DD-USA argued in its Motion, and as Plaintiffs cannot dispute, the economic loss doctrine bars the recovery of purely economic losses in employer-employee disputes. [*See* Doc. No. 25 at p. 4]. Plaintiffs' negligence claim fails because it arises from a contractual relationship, and Plaintiffs allege purely economic losses.[2] [Doc. No. 18 at pp. 20-30].

In their Opposition, Plaintiffs acknowledge the economic loss doctrine applies when a contract governs a party's claim, but assert that "the existence of that contract is not a matter the Court should resolve at the pleading stage." [Doc. No. 29 at p. 6]. In support, Plaintiffs cite *Curry v. Schletter Inc.*, 2018 WL 1472485, at *4 (W.D.N.C. 2018). But *Curry* stands for no such thing. Rather, in *Curry*, the court declined to dismiss a negligence claim where the defendant also sought dismissal of the plaintiffs' breach of contract claim on the grounds that no contract existed between the parties to safeguard PII. *Id*. But that is not what Plaintiffs have alleged in this case. Rather, Plaintiffs allege that DD-USA "entered into virtually identical contracts with its employees to provide employment and other services to them, which services included data security practices, procedures, and protocols sufficient to safeguard the Private Information." [Doc. No. 18 at p. 38]. As such, Plaintiffs' negligence claim clearly arises from a contractual relationship and is therefore subject to the economic loss doctrine.[3] *See, e.g. Severn Peanut Co., Inc. v. Industrial Fumigant Co.*, 807 F.3d 88, 94 (4th Cir. 2015) (noting that under North Carolina law, the economic loss doctrine prohibits recovery for purely economic loss for breach of contract).

As DD-USA argued, while Plaintiffs Khoune and Pollard claimed to have suffered "anxiety as a result of the release of his PII and PHI" and Plaintiff Viverette alleged he suffered from "anxiety,

[2] As noted by the Fourth Circuit: "North Carolina courts have … recognized that at-will employment relationships are contractual." *McLean v. Patten Communities, Inc.*, 332 F. 3d 714, 719 (4th Cir. 2003); *Lee v. Norfolk S. Ry. Co.*, 912 F. Supp. 2d 375, 377 (W.D.N.C. 2012).

[3] As noted by the Fourth Circuit: "North Carolina courts have … recognized that at-will employment relationships are contractual." *McLean v. Patten Communities, Inc.*, 332 F. 3d 714, 719 (4th Cir. 2003); *Lee v. Norfolk S. Ry. Co.*, 912 F. Supp. 2d 375, 377 (W.D.N.C. 2012).

sleep disruption, stress, fear, and frustration," these damages are speculative at best as there are no allegations whatsoever that their PII and PHI was actually released. [Doc. No. 18 at pp. 22, 24, 26-27]. Without any factual enhancement, such as actual misuse or possession of Plaintiffs' PII or PHI, any assertion of emotional distress or anxiety-related damages is insufficiently pled to maintain a negligence claim. *Bonham v. Wolf Creek Acad.*, 767 F. Supp. 2d 558, 570 (W.D.N.C. 2011) ("[N]o recovery is allowed when resort to speculation or conjecture is necessary to determine whether the damage resulted from the unlawful act of which complaint is made or from some other source.") (quoting *People's Ctr., Inc. v. Anderson*, 32 N.C. App. 746, 748 (1977)).

Plaintiffs further respond that they have pled "several non-economic losses including time and effort spent mitigating the effects of the data breach, emotional harms, a loss of privacy from exposure of their personal information, and increased risk of fraud and identity theft." [Doc. No. 29 at p. 5]. Plaintiffs argue that courts in the Fourth Circuit and elsewhere have found that similar injuries are noneconomic in nature. To the contrary, none of the cases Plaintiffs cite found that conclusory and generalized allegations of "non-economic losses" are sufficient to overcome the economic loss doctrine to bar recovery of purely economic losses in employer-employee disputes. Even if the alleged "non-economic damages" were sufficiently pled, Plaintiffs' negligence claim does not overcome the bar of the economic loss doctrine because it arises from a contractual relationship. *Blackman v. Bos. Whaler, Inc.*, 649 F. Supp. 3d 142, 154 (E.D.N.C. 2023) ("If the alleged tortious conduct arises from performance of or failure to perform a contract . . . then the tort does not constitute an 'independent tort,' and the economic loss doctrine bars the tort claim.") (internal citations omitted).

Accordingly, Plaintiffs' negligence claim is barred by the economic loss rule as a matter of law and, consequently, Count I should be dismissed.

### ***B. Plaintiffs have Failed to Plead a Viable Claim for Breach of Third-Party Beneficiary Contract Under North Carolina Law.***

In order to state a claim for breach of third-party beneficiary contract under North Carolina law, Plaintiffs must allege: (1) the existence of a contract between two other persons; (2) the contract is valid and enforceable; and (3) the contracting parties "intended primarily and directly to benefit him or the class of persons to which he belongs." *Edwards v. CSX Transport., Inc.*, 983 F.3d 112, 117 (4th Cir. 2020); *Brown v. N. Carolina Dep't of Env't Quality*, 917 S.E.2d 252, 259 (N.C. Ct. App. 2025). As pled, Plaintiffs do not plausibly allege the existence of **any** contract between two other persons. Rather, they simply allege, in conclusory fashion and without providing any detail or information regarding these so-called contracts, that "Defendant entered into virtually identical contracts with its employees" and "breached its contracts with its employees" and that Plaintiffs are or were employees of Defendant. [Doc. No. 18 at ¶¶ 21, 177, 180].

According to Plaintiffs, this conclusory assertion is all that is needed and they are not required "to attach the allegedly breached contracts to their complaint in order to state a claim" and that they "have adequately alleged in their Complaint that Defendant entered into contracts to provide sufficient safeguards to private information entrusted to it." [*Id.* at pp. 6-7]. Plaintiffs further admit that "[t]here is no reasonable way for Plaintiffs to know the terms of Defendant's contracts with its clients." [Opp. at p. 7]. In so arguing Plaintiffs essentially concede that their breach of third-party beneficiary claim is doomed as plead. Indeed, in order to state such a claim, Plaintiffs must allege actual facts to support the assertion that they are intended beneficiaries of these unidentified contracts, something they admittedly failed to do. In North Carolina, contracts "must be construed strictly" against plaintiffs seeking enforcement as third party beneficiaries. *In re Shearin Fam. Invs., LLC*, 418 B.R. 870, 877 (Bankr. E.D.N.C. 2009) (citing *Holshouser v. Shaner Hotel Grp. Props. One Ltd. P'ship*, 134 N.C. App. 391, 400, 518 S.E.2d 17, 25 (1999), *aff'd*, 351 N.C. 330, 524 S.E.2d 568 (2000)). Thus, the allegations in the complaint must be sufficient to overcome a presumption that the contracting parties did not intend to confer a legally enforceable benefit on the plaintiff. *Id.* When the terms of the contract are not

available to the court for review, the court's determination must be based solely on the circumstances surrounding the transaction as alleged in the complaint. *Id*.

Plaintiffs' claim appears to be based on alleged contracts between DD-USA and its clients. But the Complaint is devoid of any factual allegations regarding contracts with DD-USA's "clients" let alone allegations about the existence of any contract between two other persons. The only allegations concern alleged employment contracts entered into between DD-USA and its employees and Plaintiffs allege they are or were employees of Defendant. [Doc. No. 18 at pp. 38-39]. In other words, the allegations only plausibly allege a contract existed between Plaintiffs and DD-USA. Accordingly, Plaintiffs have failed to properly plead a claim for breach of third-party beneficiary contract because they have not plausibly alleged the existence of a contract to which they are not parties to. *See, e.g. In re Shearin Fam. Invs., LLC*, 418 B.R. 870, 876 (Bankr. E.D.N.C. 2009) ("To state a prima facie claim for breach of contract as a third-party beneficiary, the allegations in the complaint must be sufficient to allow the court to draw a reasonable inference that the plaintiff was intended to be a third-party beneficiary at the time the contract was made.") Thus, Count II should be dismissed.

### *C. Plaintiffs' Claim for Violation of North Carolina's UDTPA Fails as a Matter of Law.*

1. <u>Employer-Employee Relationships are Not Subject to the UDTPA.</u>

As DD-USA argued, and as Plaintiffs cannot seriously dispute, the North Carolina Supreme Court has made clear that the UDTPA does not govern employer-employee relationships such as the one at issue here. Rather, § 75-1 of the UDTPA is intended to "regulate two types of interactions in the business setting: (1) interactions between businesses, and (2) interactions between businesses and consumers," but not "a business's internal operations." *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 608 (M.D.N.C. 2019)(citing *White v. Thompson*, 364 N.C. 47, 53 (2010)). Specifically, § 75-1 does <u>**not**</u> apply to employer-employee relations because these activities are governed by separate regulatory schemes. *Id*. (citing *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592-94 (1991)

(observing that UDTPA "does not cover employer-employee relations")). Thus, North Carolina courts have generally exempted disputes arising from the employer-employee relationship from the UDTPA because they do not affect commerce. *Stack v. Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 667 (M.D.N.C. 2013) (citing *Durling v. King*, 146 N.C.App. 483, 488 (N.C.App. 2001). Here, Plaintiffs do not allege (nor can they) that their relationship with DD-USA was that of a business and a consumer. Instead, this was a traditional employer-employee relationship beyond the scope of the UDTPA and thus, Plaintiffs cannot maintain their UDTPA claim.

In their Opposition, Plaintiffs assert that since the language of N.C.G.S. § 75-1.1 does not explicitly mention the employer-employee relationship, such relationship is subject to the UDPTA. [Doc. No. 29 at p. 8]. But the North Carolina Supreme Court has already foreclosed that argument. As well, Plaintiffs' reliance on *Capiau v. Ascendum Mach., Inc.*, 2024 WL 3747191, at *13 (W.D.N.C. 2024) to try and salvage their UDTPA claim is misplaced. In *Capiau* the defendant never moved to dismiss the UDTPA claim on the grounds that it did not apply to the employer-employee relationship (as DD-USA has done here). Rather, it moved to dismiss the plaintiff's UDTPA claim "contending that [the] [p]laintiff's complaint fails to (1) satisfy the heightened pleading requirements applicable to fraud claims under Fed. R. Civ. P. 9(b), and (2) allege actual injury. *Id*. Simply stated, *Capiau* is entirely irrelevant to the arguments raised by DD-USA as to why Plaintiffs' UDTPA claim fails as a matter of law.

Plaintiffs' reliance on *Curry v. Schletter Inc.*, 2018 WL 1472485, at *5 (W.D.N.C. 2018) fares no better. In *Curry*, just like in *Capiau*, the court did not analyze whether the UDTPA applies in the context of an employer-employee relationship. *Id*. Rather, the court simply considered whether the plaintiff sufficiently pled violations of the ITPA – namely, § 75-62(a)(1) and § 75-62(a)(6). *Id*. Specifically, the court found the allegations that the defendant "mailed a form letter to all current and former employees throughout the United States, advising that the employees' 2015 W-2 tax form

information had been sent to an unauthorized third party in response to a W-2 phishing email scam" was sufficient to state claims under ITPA. *Id.* at *1. But Plaintiffs make no such allegation here.

2. Sharing PHI or PII with One's Employer does not Constitute an Act In or Affecting Commerce Subject to the UDTPA.

Nor have Plaintiffs sufficiently alleged that DD-USA's alleged actions regarding the acquisition and storage of Plaintiffs' PHI or PII "[a]s a condition of providing employment" are acts in or affecting commerce as required to state a UDTPA claim.

"Although commerce is defined broadly under G.S. § 75–1.1(b) .... 'the fundamental purpose of G.S. § 75–1.1(b) is to protect the consuming public.'" *In re Brokers, Inc.*, 396 B.R. 146, 161 (Bankr. M.D.N.C. 2008) (internal citation omitted). To "affect commerce," a defendant's allegedly deceptive acts must have a tangible effect on the marketplace. *See Esposito v. Talbert & Bright, Inc.*, 181 N.C.App. 742, 746, 641 S.E.2d 695, 698 (2007) (upholding a denial of summary judgment when no effect on commerce was alleged beyond an employee's relationship with his employer).

Plaintiffs' Complaint lacks any factual allegations whatsoever that DD-USA's purported acquisition and storage of PII or PHI constitutes "business activities" as contemplated by the UDTPA. Nor could they, as it was not part of its regular day-to-day business. Instead, as Plaintiffs concede, DD-USA "specializes in the…distribution of tractor and utility vehicles, engines, attachments, implements, and accessories." [Doc. No. 18 at p. 1]. In the Opposition, Plaintiffs simply assert "[t]he collection and maintenance of its employees' Private Information is an integral part of Defendant's commercial activities, without which it could not function." [Doc. No. 29 at p. 8]. But Plaintiffs cite no allegations in their Complaint to show that DD-USA's conduct regarding its employees' PHI or PII could plausibly amount to "business activities" affecting commerce and thus subject to the UDTPA. As such, Plaintiffs' UDTPA should be dismissed.

3. Plaintiffs have Failed to Adequately Allege a Violation of the ITPA to Support a UDTPA Claim.

Plaintiffs' UDTPA is based on DD-USA purportedly failing to "disclose the data security breach to Plaintiffs and the Class Members in a timely and accurate manner." [Doc. No. 18 at p. 41]. However, as DD-USA argued in its Motion, the ITPA specifically provides that there is no private right of action available to an individual unless the individual has been injured as a result of the violation. N.C. Gen. Stat. § 75-65(i)("[N]o private right of action may be brought by an individual for a violation of this section unless such individual is injured *as a result* of the violation."); *see also Rogers v. Keffer, Inc.*, 243 F. Supp. 3d 650, 663 (E.D.N.C. 2017) (dismissing a clam under the ITPA where the plaintiff failed to demonstrate any damages resulting from the timing of the notification of a security breach). Plaintiffs do no address this in their Opposition.

Rather, Plaintiffs argue that they allege DD-USA "violated § 75-62(a)(1) by intentionally communicating their Social Security numbers to the general public and § 75-62(a)(6) by intentionally disclosing their Social Security numbers to a third party without written consent" citing to paragraph 194 of their Complaint. [Doc No. 29 at p. 9]. However, paragraph 194 states nothing of the sort and Plaintiffs cannot add allegations that do not exist in the Complaint. *See S. Walk at Broadlands Homeowner's Ass'n, Inc.*, 713 F.3d at 184 ("It is well-established that parties cannot amend their complaints through briefing."). Nor did Plaintiffs raise "precisely the [same] allegations" as in *Curry*. *See Curry*, 2018 WL 1472485, at *5. Plaintiffs have therefore failed to state a viable ITPA claim under the UDTPA against DD-USA, and as a result, Count III should be dismissed.

### ***D. Plaintiffs Have Failed to Properly Plead an Unjust Enrichment Claim.***

Unjust enrichment "was devised by equity to exact the return of or payment for" a measurable benefit "where it would be unfair for the recipient to retain [it] without the contributor being repaid or compensated." *Mountain Land Props., Inc. v. Lovell*, 46 F. Supp. 3d 609, 629 (W.D.N.C. 2014). As DD-USA argued, Plaintiffs have failed to adequately allege that they conferred any benefit upon it. Nor do they plausibly allege that they conferred any measurable benefit upon DD-USA. Plaintiffs' conclusory allegations that they somehow conferred a benefit upon DD-USA by providing their PHI

and PII as a condition of employment with DD-USA is not sufficient. Plaintiffs' theory also fails because any alleged benefit was conferred by DD-USA's customers and/or clients, **not** Plaintiffs. *See Barrett v. Coston*, 261 N.C. App. 311, 315, 820 S.E.2d 573, 575 (2018) (affirming order granting motion to dismiss when "the benefit was allegedly conferred upon Defendant by" someone other than the plaintiff).

In response, Plaintiffs argue they conferred a benefit on DD-USA by "turning over" their private information to DD-USA and that "Defendant received Plaintiffs' labor, which, in turn, permitted Defendant to earn revenues it would not have been able to earn without Plaintiffs' labor." [Doc. No. 29 at p. 10]. But Plaintiffs fail to cite to any factual allegations to support their conclusory assertions. *See Browning*, 230 N.C.App. 537, 541–42 (N.C. 2013). Indeed, Plaintiffs have not identified **any measurable** benefit conferred on DD-USA as required to state a viable unjust enrichment claim. Even assuming, *arguendo*, that PHI or PII was required as a condition of employment, Plaintiffs do not allege or explain how that was anything more than an administrative or regulatory requirement incidental to their employment or that DD-USA profited from its use or storage. *See, e.g., In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 413 (E.D. Va. 2020). Plaintiffs have not presented any concept through which they can demonstrate how an administrative condition of employment is measurable at all. Plaintiffs' unjust enrichment claim fails for these reasons and should be dismissed.

### *E. Plaintiffs' Declaratory Judgment Claim Fails Because There Is No Live or Justiciable Controversy Between the Parties.*

Plaintiffs' Complaint alleges, in conclusory fashion, that "Defendant's data security measures remain inadequate" and "Plaintiffs continue to suffer injury as a result of the compromise of his Private Information and the risk remains that further compromises of his Private Information will occur in the future." [Doc. No. 18 at p. 49]. However, Plaintiffs make no allegations whatsoever that this controversy remains ongoing. Rather, Plaintiffs' claims are all predicated upon a data breach that has already occurred, which courts have made clear is insufficient to support a declaratory judgment claim. [*See id.*

at pp. 48-51]. As such, dismissal of Count V is appropriate because a past data breach is insufficient to state a viable claim for declaratory judgment because the controversy is neither live or ongoing. [*See* Doc. No. 25 at pp. 21-22].

In response, Plaintiffs rely exclusively on the conclusory allegations that DD-USA's "existing data security measures remain inadequate and do not comply with Defendant's explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect its employees' Private Information." [Doc. No. 29 at p. 13]. But even if true (and it is not), Plaintiffs have not plausibly asserted that DD-USA's allegedly insufficient security measures make them more likely to suffer future injury. This is required to establish that a justiciable controversy exists to warrant declaratory relief. Nor have they plausibly alleged that issuing a declaratory judgment would redress any supposed injuries Plaintiffs have or will suffer. Rather, "[t]his is simply not a case where the controversy between the parties warrants issuance of a declaratory judgment." *Capiau,* 2024 WL 3747191, at *9 (finding the plaintiff's claims cannot be redressed by a declaratory judgment where following the data breach, Defendant committed to "implement additional safeguards and review policies and procedures relating to data privacy and security" and finding that the plaintiff "fails to show—now that Defendant has adopted those safeguards—that Plaintiff remains likely to suffer future injury caused by a second breach.").

Accordingly, Plaintiffs have failed to state a viable declaratory judgment claim against DD-USA and Count V should be dismissed.

## III. CONCLUSION

For the reasons more fully stated herein, and in DD-USA's Motion to Dismiss, Plaintiffs' Complaint fails to state a viable claim for relief and should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted, this the 10th day of October, 2025.


THARRINGTON SMITH, LLP

*<u>/ s/ F. Hill Allen</u>*
F. Hill Allen
N.C. Bar No. 18884
Colin A. Shive
N.C. Bar No. 43202
150 Fayetteville Street, Suite 1900
P.O. Box 1151
Raleigh, NC 27602
Phone: (919) 821-4711
Hallen@tharringtonsmith.com
Cshive@tharringtonsmith.com

MCGLINCHEY STAFFORD, PLLC

Megan S. Ben'Ary
Virginia Bar No. 47439
1275 Pennsylvania Ave., NW,
Suite 420
Washington, DC 20004
Phone: (202) 802-9949
mbenary@mcglinchey.com
**Notice of Special Appearance filed*

James W. Sandy
Ohio Bar No. 84246
3401 Tuttle Road, Suite 200
Cleveland, OH 44122
Phone: (216) 378-9905
jsandy@mcglinchey.com
**Notice of Special Appearance filed*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October, 2025, I electronically filed the foregoing **DEFENDANT DAEDONG-USA, INC.'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

THARRINGTON SMITH, L.L.P.

*/s/ F. Hill Allen*
F. Hill Allen
N.C. State Bar No. 18884